**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────

**ANGEL MALDONADO, 03-R-2519,**

                             **Plaintiff,**

        **-v-**                                **11-CV-0717A(Sr)**

**ANDREA W. EVANS, Chairwoman & CEO,**
**New York State Division of Parole and**
**BRIAN FISCHER, Commissioner,**
**New York State Department of**
**Correctional Services,**

                             **Defendants.**

───────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. Richard J. Arcara,

in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report

upon dispositive motions.  Dkt. #5.


        Plaintiff commenced this action, *pro se*, against Andrea W. Evans,

Chairwoman of the New York State Division of Parole ("NYSDOP"), and Brian Fischer,

Commissioner of the New York State Department of Correctional Services

("NYSDOCS"), alleging that they violated his right to due process and deprived him of

his liberty by incarcerating him beyond the sentence to which he agreed as part of a

plea bargain for a parole violation.  Dkt. #1.  Plaintiff subsequently amended his

complaint to add Diana Sherry, Livingston Correctional Facility Parole Officer ("PO"),

and Susanna Mattingly, NYSDOP Field PO, as defendants. Dkt. ##49 & 54.

Currently before the Court are motions for summary judgment by plaintiff (Dkt. #62), and defendants.  Dkt. #69.  For the following reasons, it is recommended that plaintiff's motion for summary judgment (Dkt. #62), be denied and defendants' motion for summary judgment (Dkt. #69), be granted.

## FACTUAL BACKGROUND

On March 10, 1997, following his guilty plea to sexual misconduct in satisfaction of a charge of rape, third degree, plaintiff was sentenced to three years of probation.  Dkt. #36-1, p.183.  As a result of this conviction, plaintiff is supervised as a discretionary sex offender.[1]  Dkt. #36-1, p.197 & Dkt. #69-5, ¶ 22.

On April 25, 2003, following his guilty plea to a scheme to defraud, first degree; three counts of grand larceny, third degree; attempted petit larceny; tampering with physical evidence; compounding a crime; coercion, second degree; bribing a witness; tampering with a witness, fourth degree; three counts of criminal impersonation, second degree; harassment, second degree; and three counts of aggravated harassment in the second degree, in satisfaction of Indictment No. 2340/99 and bail jumping, second degree, in satisfaction of Indictment No. 891/01, plaintiff was sentenced to an aggregate indeterminate term of imprisonment of 5 to 15 years.   Dkt. #36-2, pp.6-8.

---

[1] Plaintiff is challenging the imposition of sex offender conditions in a separate action commenced pursuant to 42 U.S.C. § 1983. 11-CV-1091.

Plaintiff was released on parole on May 28, 2009.  Dkt. #62-1, p.32.  A Violation of Release Report charged plaintiff with 7 violations of the terms and conditions of his release, including failure to complete sex offender treatment, lying to his parole officer about sex offender treatment, lying to his parole officer about employment, failing to provide his cell phone number to his parole officer and lying to his parole officer about his cell phone number.  Dkt. #36-1, p.197.  On November 24, 2009, plaintiff pled guilty to the charges of failing to provide his parole officer with his cell phone number and lying to his parole officer.  Dkt. #36-1, p.198.  Plaintiff was sentenced to time served plus three months.  Dkt. #36-1, p.198.

Plaintiff was released on parole on February 24, 2010 subject to, *inter alia,* the following conditions:

- participate and cooperate with the case managers at Grace House to assist me in finding appropriate housing which ultimately has to be approved by my Parole Officer;

- have no contact of any kind . . . with a one, Valerie Cole without the written permission of my Parole Officer.

Dkt. #36-1, p.200 & Dkt. #66-2, p.30.  A Violation of Release Report dated March 16, 2010 charged plaintiff with 16 violations of the terms and conditions of his release, including multiple charges of failure to be truthful in his discussions with his parole officer and failure to comply with rules at Grace House, resulting in plaintiff's discharge from his residential program.  Dkt. #36-1, pp.192-202.

A Final Parole Violation Hearing was conducted on April 8, 2010.  Dkt. #36-1, p.157.  Plaintiff pled guilty to a violation pertaining to his discharge from Grace House for failure to comply with the program in return for a sentence of time served plus three months.  Dkt. #62-1, p.4.  Administrative Law Judge ("ALJ"), Graber informed plaintiff that "the disposition would be a hold of time served, which means the time since you were incarcerated to today plus three more months, so you would be released July 8th."  Dkt. #62-1, p.64.  However, the parole revocation notice informed plaintiff:

> NOTE: Estimated delinquent time assessment expiration date 7/8/10.  As of this date you are eligible for re-release consideration.  This may occur while you are either in local custody or following your return to a state correctional facility.  This date is not to be interpreted as an established release date.

Dkt. #62-1, p.4.

On May 19, 2010, plaintiff provided two possible residences for his parole release: with his father in Florida and with his wife in Arcade, New York.  Dkt. #69-5, ¶ 38.  A request for plaintiff to serve parole in Florida was forwarded to Interstate on May 20, 2010.  Dkt. #69-5, ¶ 40.

On May 25, 2010, plaintiff provided a lease for 15½ Mill Street in Arcade, New York, which listed plaintiff and his wife, Kimberly as tenants.  Dkt. #69-5, ¶ 41 & Dkt. #66-1, p.4.  On June 21, 2010, PO Fuller disapproved the residence in Arcade for the following reasons:

During the course of the investigation into this residence, it was discovered that the subject and Kimberly Maldonado are married in name only.  It was established that there is a romantic relationship with the subject and Valerie Cole-Adams.  The residence in Arcade was secured merely as a ruse to get the subject near his current love interest.  Alarmingly, Kimberly Maldonado put up a facade indicating that she would be residing in the apartment with her husband.  Suspicion arouse [sic] after Ms. Maldonado could not provide directions to the residence . . . Furthermore, investigation revealed that Ms. Maldonado had not been to prison to visit her "husband" nor had she had phone contact or mailed packages to him since May of 2009.  The only visit between the two occurred after this writer initiated contact with Ms. Maldonado and asked about her lack of visitation and phone contact. . . . Also noteworthy is the fact that an appointment to view the home with Ms. Maldonado could not be set until after she visited him in prison to "see what was going on."

At the facility level, investigation . . . revealed that there was conversation with the subject and Ms. Cole-Adams regarding child rearing issues and regarding Kimberly Maldonado needs to "make a showing of picking him up from prison in case parole is watching."[2]

As it is clear that the subject continues his deceptive behavior while in prison, it is almost certain he will continue the same deceptive behavior upon his release.  Investigation into this Community Prep assignment has not revealed any significant relationship between the subject and his wife but has revealed a significant relationship with the subject and Ms. Cole-Adams, who, interestingly enough, lives around the corner from the proposed residence.  The subject has been determined to be a Discretionary Sex Offender and has been supervised as such in the past.  Ms. Cole-Adams has two minor children that reside with her.

Based on the abundance of lies and deception by this trio, the address is denied.  The file will be returned to the officer covering his last known address.

Dkt. #66-2, p.32.

_____

[2] PO Sherry reviewed taped conversations between plaintiff and Valerie Cole.  Dkt. #36-1, p.136 & Dkt. #69-6, ¶ 20.

In the absence of an approved residence, PO Mattingly contacted Grace House to see if they would allow plaintiff to stay there until his Florida Interstate transfer request was complete.  Dkt. #69-5, ¶ 53.  Grace House rejected her request.  Dkt. #69-5, ¶ 54.

On June 30, 2010, PO Mattingly received a telephone call from a woman who stated that she had sent 25 $1,000 money orders to Valerie Cole based upon plaintiff's claims that he could obtain an attorney for her son, who had previously been incarcerated with plaintiff.  Dkt. #36-1, pp.177 & 253-259 & Dkt. #69-5, ¶ 58.  PO Mattingly referred Ms. O'Brien to the New York State Police. Dkt. #69-5, ¶ 58.

On July 1, 2010, PO Mattingly requested that plaintiff be placed on the wait list for Hennigan House.  Dkt. #69-5, ¶ 62.  She also requested that NYSDOP impose special conditions on plaintiff's parole, *to wit*, that his residency be pre-approved and that his release be delayed until such approval was obtained.  Dkt. #36-1, pp.170-178 & Dkt. #69-5, ¶¶ 65-66.

On July 7, 2010, PO Sherry received an e-mail from Lester Edwards, Secretary to the Board of Parole indicating that the Board of Parole had imposed new conditions on plaintiff's residency, *to wit,*

- I will propose a residence to be approved by the Division of Parole and will assist the Division in any efforts it may make on my behalf to develop an approved residence.

- I will reside only in the residence approved by the
  Division of Parole.

Dkt. #36-1, pp.167-168 & Dkt. #69-6, ¶ 37.  A Memorandum from the NYSDOP dated

July 7, 2010 states that "[p]er agreement of Parole and Department of Correctional

Services, inmate Angel Maldonado . . . is not to be released until there is an approved

program."  Dkt. #66-2, p.3.

PO Sherry met with plaintiff that afternoon and explained that he was on

the waiting list at Hennigan house, but that his release would be delayed until the new

conditions were satisfied.  Dkt. #69-6, ¶ 38. A Memorandum from PO Sherry dated July

7, 2010, advised plaintiff:

> It is necessary for you to have an offer of residence which
> has been approved by the Division of Parole before you can
> be released.
>
> Until such time that a residence is made available to you
> and approved by the Division of Parole, as required by the
> special conditions imposed upon you by Commissioner
> Hernandez, your release will be delayed.  Your release date
> was originally scheduled for July 8, 2010.

Dkt. #69-6, p.13.

Florida approved transfer of plaintiff's parole on August 10, 2010.  Dkt.

#69-5, ¶ 79.

In an e-mail to her superiors dated August 16, 2010, PO Sherry requested

a conference regarding plaintiff's case due to

an ongoing investigation by NYS Police, but no warrant as of my last contact with investigators. The copy of a sworn deposition given by the female victim to PO Mattingly alleging fraud in the amount of $25,000 was faxed to this office.[3]  What complicates this case is Interstate has just approved his release to Florida as soon as Maldonado has his travel arrangements.  He is an RPV, date 7/8/10 but delayed due to Board imposition of residency conditions.

I spoke with Mike Hayden in Interstate and he deferred to [Board secretary] Lester Edwards.  Lester first said refer the case to the Board, then he said Maldonado should be allowed to transfer to Florida as he can always be called back to NY.  Then Lester told me to conference with you. . . . First, based upon his past behaviors of abscondance [sic] to Puerto Rico and the complications with finally taking him into custody, it is reasonable to believe if this subject was allowed to parole to Florida, he would not likely return to NY as directed, especially to face felony charges.

Secondly, there has been a huge amount of time invested in this investigation, from the victim, PO Mattingly, IG, State Police, to this facility.  I'm concerned about just having him walk under these circumstances.

Please advise. Our Board is 8/24 so it could be handled quickly enough.

Dkt. #36-1, pp.150-151.


On August 20, 2010, PO Sherry referred plaintiff's case to the Board of

Parole for Parole Violator Reappearance.  Dkt. $69-6, ¶ 63.  If the Board agreed to

interview plaintiff, PO Sherry requested "a postponement of one month for completion

of records."  Dkt. #66-2, p.5.  A Memorandum from the NYSDOP dated August 20,

2010, received by plaintiff on August 23, 2010, advised plaintiff that:

---

[3] Ms. O'Brien's supporting deposition is at Dkt. #36-1, pp.248-250.

Upon your return to the New York State Department of Correctional Services as a Parole Violator, you case was reviewed and it was determined you would be eligible for release upon completion of the imposed time assessment. However, since that determination you have:

* * *

X   Other, Sworn deposition of July 12, 2010 alleging fraudulent behaviors involving $25,000, by victim Laura O'Brien.  This disposition [sic] was reviewed at this office on August 6, 2010.

As a result of the above, your case must now be reviewed by the Board of Parole for release consideration.

Dkt. #69-6, p.15.


On August 24, 2010, the Board of Parole agreed to interview plaintiff but postponed the hearing for one month for completion of records.  Dkt. #62-1, p.24 & . Dkt. #69-6, ¶ 68.


Having determined that Ms. O'Brien's money orders were cashed in Buffalo, the New York State Police involved the Erie County District Attorney's Office in the investigation of Ms. O'Brien's allegations and requested that the NYSDOP maintain custody of plaintiff pending further investigation of plaintiff's involvement in grand larceny, third degree.  Dkt. #66-2, p.7 & Dkt. #69-5, ¶ 84.


Plaintiff, represented by counsel, filed a petition for writ of *habeas corpus* In New York State Supreme Court, Erie County, on September 9, 2010.  Dkt. #62-1, p.30.

Plaintiff appeared before the Board of Parole on September 23, 2010 and was afforded a release date of September 29, 2010, at which time he commenced supervision in the State of Florida.  Dkt. #36-1, pp.179-180 & Dkt. #68, ¶ 25.

Plaintiff's counsel moved to convert the petition for writ of *habeas corpus* into an Article 78 proceeding seeking to vacate the parole violation.  Dkt. #62-1, pp.43-44.  By Decision and Order dated December 13, 2010, Russell P. Buscaglia, J.S.C., determined that

> Since the Respondent violated the terms of the plea agreement by incarcerating the Relator/Petitioner approximately seven (7) weeks beyond the agreed upon release date without due process and without abiding by their own rules and regulations, this Court must vacate the hearing decision, annul the punishment, expunge the record and restore the Relator/Petitioner's pre-hearing record.  The Relator/Petitioner is not absolved of his alleged wrongdoing with respect to the alleged parole violations, but he is granted a hearing *de novo*.

Dkt. #62-1, p.46.

A warrant was issued for plaintiff's arrest on February 7, 2011 after plaintiff failed to report, left his employment and vacated his address without his parole officer's permission.  Dkt. #36-1, p.179.  Plaintiff was stopped by the Sheriff's Department in Rutherford, Tennessee on May 10, 2011 and extradited to New York.  Dkt. #36-1, pp.246-247.  A Violation of Release Report charged plaintiff with changing his parole approved residence, failing to report, changing his approved employment program without notifying his PO and engaging in criminal activity.  Dkt. #36-1, p.245.

Plaintiff pled guilty to the charge of failing to report to his PO and was assessed six months of delinquent time.  Dkt. #36-1, pp.228-244.

Plaintiff was charged in an indictment filed February 15, 2011 with grand larceny in the third degree in violation of New York Penal Law § 155.35 for stealing more than $3,000.00 from Laura O'Brien.  Dkt. #69-7, p.50.

In accordance with Judge Buscaglia's Decision and Order, a *de novo* hearing was held on July 26, 2011 at which time the NYSDOP withdrew the violations. Dkt. #36-1, pp.224-225 & Dkt. #68, ¶ 18.

Plaintiff was convicted on the charge of grand larceny, third degree, on August 17, 2012 and sentenced as a second felony offender to an indeterminate term of imprisonment of 3½ to 7 years, consecutive to any parole time, with restitution ordered in the amount of $25,000.  Dkt. #69-7, p.52.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while

resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Preclusion**

Plaintiff argues that the ALJ's determination that plaintiff was incarcerated seven weeks beyond his release date without due process is binding upon this Court. Dkt. #62, p.22.

Defendants dispute that issue preclusion applies given that none of the defendants were named in the state proceedings in their individual capacity and that the individual defendants named in this action were not in privity with the defendants named in their official capacities in the state proceedings.  Dkt. #68-1, pp.13-14.

Plaintiff replies that collateral estoppel and *res judicata* apply.  Dkt. #78, pp.12-14.

Although plaintiff initially refers to this argument as based upon the "law of the case,"  that doctrine is inapplicable where, as here, the decision plaintiff seeks to apply was rendered in a separate action. *See DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) (law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case).

"The full faith and credit clause of the Constitution of the United States requires a federal court to give the same preclusive effect to a state court judgment as

would be given in the state in which it was rendered." *Davidson v. Capuano*, 792 F.2d

275, 277-78 (2d Cir. 1986). "The law of preclusion can be divided into two categories:

*res judicata* (claim preclusion) and collateral estoppel (issue preclusion)." *Crosland v.*

*City of New York*, 140 F. Supp.2d 300, 309 (S.D.N.Y. 2001), *aff'd* 54 Fed. Appx. 504

(2d Cir. 2002). The doctrine of *res judicata* applies in later litigation if an earlier

decision was (1) a final decision on the merits; (2) by a court of competent jurisdiction;

(3) in a case involving the same parties or their privies; and (4) involving the same

cause of action. *Hecht v. United Collection Bureau, Inc*., 691 F.3d 218, 221-22 (2d Cir.

2012). The doctrine of collateral estoppel applies if: (1) the issue in question was

actually and necessarily decided in a prior proceeding; and (2) the party against whom

the doctrine is asserted had a full and fair opportunity to litigate the issue in the first

proceeding. *Colon*, 58 F.3d at 869.


        As the defendants in the article 78 proceeding were government officials

sued in their official capacities, whereas this § 1983 action seeks damages from

defendants in their individual capacities, the earlier decision did not involve the same

parties that are involved in this action. *See Tierney v. Davidson,* 133 F.3d 189, 195 (2d

Cir. 1998) (public official sued in individual capacity is not considered to be in privity

with government). Therefore, the determination of the article 78 proceeding cannot be

used to preclude defendants from litigating the merits of plaintiff's due process claim

pursuant to 42 U.S.C. § 1983. *Gutierrez v. Coughlin*, 841 F.2d 484, 486 (2d Cir. 1988);

*See Hicks v. Richard Low*, 309 Fed. Appx. 472, 474 (2d Cir. 2009)(article 78

-14-

proceeding had no preclusive effect because, *inter alia*, it could only be brought against

the agency and the officers in their official capacities, whereas § 1983 action was

commenced against defendants as individuals); *Johnson v. County of Nassau*, 480 F.

Supp.2d 581, 607 (E.D.N.Y. 2007) (judgment against government officials sued in their

official capacities is not binding in subsequent litigation seeking personal liability).


**42 U.S.C. § 1983**

Plaintiff argues that Executive Law 259-i(f)(x) and (3)(g) requires plaintiff's

release upon the date set by the ALJ and that the failure to release him on that date

denied him the benefit of his plea bargain.  Dkt. #62, pp.17, 20 & 23.


Defendants argue that plaintiff did not possess a reasonable expectation

of release on July 8, 2010 and that the Board of Parole retained the authority to impose

a special condition requiring that his residence be approved prior to his re-release on

parole.  Dkt. #68-1, pp.6-7.  In addition, defendants argue that 9 N.Y.C.R.R. § 8002.6(c)

provides authority for the Board to consider plaintiff's re-release upon receipt of

information supporting a reasonable conclusion that a parole violator may not be

suitable for re-release.  Dkt. #68-1, p.7.


To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts

indicating that some official action has caused the plaintiff to be deprived of his

constitutional rights.  *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011); *See Sykes*

*v. James*, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."), *cert. denied*, 512 U.S. 1240 (1994).  To present a due process claim, plaintiff must establish that he possess a protected liberty interest and that he was deprived of that interest as a result of insufficient process by a defendant acting under color of state law.  *Bedoya v, Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).

      "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001).  It is clear, however, that "[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Id.* at 171. More specifically, a prisoner "has no liberty interest in being re-released to parole supervision after his time assessment concluded." *Cofield v. Lempke*, No. 10-CV-284, 2011 WL 2881951, at * 4 (W.D.N.Y. July 15, 2011).  "The question of whether to re-release an inmate to parole supervision is squarely within the parole board's discretion, and no procedural due process concerns are implicated." *Lewis v. Brown*, No. 10-CV-796, 2013 WL 2181520, at *5 (W.D.N.Y. May 20, 2013); *See Loria v. Butera*, No. 09-CV-531, 2010 WL 3909884, at * 5  (N.D.N.Y. Sept. 29, 2010) ("parole re-release, as with parole release, is subject to the Parole Board's discretion.").  Thus, plaintiff's due process rights "extend only to a refusal by the Parole Board to deny release arbitrarily or capriciously, based on inappropriate consideration of a protected classification or an irrational distinction, or

any other unconstitutional grounds." *Morel v. Thomas*, No. 02 Civ. 9622, 2003 WL
21488017, at *4 (S.D.N.Y. June 26, 2003); *See Siao-Pao v. Connolly*, 564 F. Supp.2d
232, 242 (S.D.N.Y. 2008); *Boddie v. New York State Div. of Parole*, 288 F. Supp.2d
431, 440 (S.D.N.Y. 2003).

New York Executive Law § 259-i(3)(x)(c), as in effect from April 7, 2009 to
March 30, 2011 - the relevant time frame for the allegations set forth in plaintiff's
complaint - provides that if the ALJ has found a violation of a parolee's conditions of
release, the ALJ may "direct the violator's re-incarceration and fix a date for
consideration by the board for re-release."  The statute further provided that

> Where a date has been fixed for the violator's re-release . . .
> the board or board member may waive the personal
> interview between a board member or members of the board
> and the violator to determine the suitability for re-release;
> provided, however, that the board shall retain the authority to
> suspend the date fixed for re-release and to require a
> personal interview based on the violator's institutional record
> or on such other basis as is authorized by the rules and
> regulations of the board.

New York Executive Law § 259-i(3)(x)(c) (effective April 7, 2009 to March 30, 2011).
The Court notes that plaintiff relies upon the amended version of New York Executive
Law § 259-i(3)(x)(c), which currently provides that a "violator serving an indeterminate
sentence who while reincarcerated has not been found by the department to have
committed a serious disciplinary infraction . . . shall be re-released on the date fixed at
the revocation hearing."

In accordance with that statute, the Parole Revocation Decision Notice advised plaintiff that as of the estimated delinquent time assessment expiration date of July 8, 2010, plaintiff would be "eligible for re-release consideration."  Dkt. #62-1, p.4. 9 N.Y.C.R.R. § 8002.6(a) defines time assessment as "a period of time which is fixed as a result of a final parole revocation hearing and which determines a date by which time the parole violator will be eligible for re-release."  Pursuant to 9 N.Y.C.R.R. § 8002.6(c)(1)(iv), all parole violators identified as eligible for re-release as defined by 9 N.Y.C.R.R. § 8002.6(a) will be re-released to parole supervision as soon as practicable after completion of the delinquent time assessment unless "the board receives any information that supports a reasonable conclusion that the parole violator may not be suitable for re-release."  Upon receipt of such information, one or more members of the board may, prior to the expiration of the time assessment and without a personal interview, "direct that "the violator be re-released to supervision upon expiration of the time assessment after a satisfactory release program is developed" or require that a personal interview be conducted "within a reasonable time."  9 N.Y.C.R.R. § 8002.6(d)(2).  "When, after such interview, the board again considers the parole violator for re-release, there shall be no presumption, express or implied, favoring the violator's release." 9 N.Y.C.R.R. § 8002.6(d)(2)(b).

In the instant case, prior to the expiration of plaintiff's time assessment, a member of the NYSDOP determined that plaintiff's release program should include approval of his residence and plaintiff was advised, in writing, that he was required to have an approved residence as a special condition of his parole.  The Court notes that

a parolee has no constitutionally protected interest in being free from special conditions of release. *Walker v. Mattingly*, No. 09-CV-845, 2012 WL 1160772, at *6 (W.D.N.Y. April 5, 2012); *See Ahlers v. New York State Div. of Parole*, 1 A.D.3d 849 (3rd Dep't 2003) ("The imposition of a special condition upon the release of an inmate is discretionary in nature and beyond judicial review so long as it is made in accordance with law."). Given the evidence that plaintiff was deceiving NYSDOP as to his proposed living arrangements, the imposition of the residency conditions were clearly within the NYSDOP's discretion. Similarly, the NYSDOP's determination to interview plaintiff following receipt of a sworn deposition indicating that plaintiff fraudulently induced Ms. O'Brien to send Valerie Cole $25,000, is both reasonable and, pursuant to 9 N.Y.C.R.R. § 8002.6(d), permissible.

**Qualified Immunity**

        Defendants Mattingly and Sherry argue that, even if there was a question as to whether plaintiff's due process rights were violated, they are entitled to qualified immunity. Dkt. #68-1, pp.15-18.

        Qualified immunity protects government officials from liability where the officials' conduct was not in violation of a clearly established constitutional right. *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012), *cert. denied*, __ U.S. __, 133 S.Ct. 2777 (2013). "To determine whether a particular right was clearly established at the time defendants acted, a court should consider: (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme

Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (internal quotation omitted).  If the conduct did not violate a clearly established constitutional right, or if it was objectively reasonable for the official to  believe that her conduct did not violate such a right, then the official is protected by qualified immunity.  *Id.*  The doctrine shields government officials from liability when they make reasonable mistakes about the legality of their actions and applies regardless of whether the error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.  *Id.*  Thus, the Supreme Court has observed that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Id., quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986).  As it was not unreasonable for PO Mattingly and P.O. Sherry to request the imposition of special conditions or to request that the NYSDOP conduct a personal interview of plaintiff prior to his re-release, and there is no case law to suggest that such a request was unlawful, qualified immunity is appropriate.


**Personal Involvement**

             Defendants argue that they had insufficient personal involvement in the alleged violation of plaintiff's constitutional rights to establish liability pursuant to 42 U.S.C. § 1983.  Dkt. #69-1, pp.7-12.  Specifically, Chairwoman Evans and Commissioner Fischer argue that their only involvement in this matter was as defendants, in their official capacities, in the *habeas corpus* and article 78 proceedings.

Dkt. #69-1, pp.9-11.  PO Mattingly and PO Sherry argue that they cannot be deemed personally involved because it was the Board of Parole that imposed the residency condition on plaintiff's parole and determined that his appearance before the Board was necessary. Dkt. #69-1, pp.11-12.

Plaintiff responds that Chairwoman Evans and Commissioner Fischer's failure to address plaintiff's claim of denial of due process despite knowledge of plaintiff's claims by virtue of the writ of *habeas corpus* action naming them as defendants is sufficient to establish personal involvement.  Dkt. #78, p.6.   As to defendants Mattingly and Sherry, plaintiff argues that they were personally involved in the request for special conditions and request for plaintiff's appearance before the NYSDOP.  Dkt. #78, pp.7-10.

It is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983.  *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir. 1989).  Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant

exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873. "There is no *respondeat superior* liability in § 1983 cases." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

Chairwoman Evans and Commissioner Fischer each submitted affidavits explaining their lack of involvement in routine legal actions in which they are named as defendants in their official capacities and denying any personal knowledge of plaintiff's circumstances. Dkt. #69-3 & Dkt. #69-4. As there is no evidence to suggest that these defendants were personally involved in or aware of plaintiff's incarceration beyond July 8, 2010, but are only named as defendants in this action because of their position of authority within the NYSDOP and NYSDOCS, summary judgement is warranted.

In contrast, P.O. Mattingly's request that NYSDOP impose special conditions on plaintiff's parole and P.O. Sherry's referral of plaintiff's case to the NYSDOP for Parole Violator Reappearance, as well as her request for a postponement of that proceeding for one month for completion of records, is sufficient to establish their personal involvement in the events underlying plaintiff's complaint.

## **CONCLUSION**

For the reasons set forth above, it is recommended that plaintiff's motion for summary judgment (Dkt. #62), be denied and defendants' motion for summary judgment (Dkt. #69), be granted.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis

for such objection and shall be supported by legal authority."  <u>Failure to comply with the</u>

<u>provisions of Rule 72(b) may result in the District Judge's refusal to consider the</u>

<u>objection.</u>

       The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

       **SO ORDERED.**

**DATED:**      **Buffalo, New York**
              **September 26, 2014**

                                  *  s/ H. Kenneth Schroeder, Jr.  *
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**